Mr. Gordon, whenever you're ready. May it please the Court. First of all, I want to say good morning. We're here for a limited purpose, at least in my opinion. We're here because the district court found that we failed to present a defense or offense to the good faith and mission of Mr. Terrence Williams. And as you know, Mr. Terrence Williams was injured in a rollover car accident. And we believe that Dimensions Health Care Services violated the EMTALA rules by failing to stabilize him. It was brought up during the reply brief of Dimensions that they raised for the first time the good faith defense. And we never had an opportunity to deal with that defense. However, I think the evidence, I think that should have been a jury question as opposed to something that the court would have decided. How would you deal with that defense now? Our argument now is that there was an absence of qualified staff at the time of this event. As you know, there's supposed to be on call within 30 minutes of arrival, an orthopedic, vascular and emergency room surgeon. In this particular case, the emergency room surgeon or the emergency room surgeon had the ability to treat Mr. Williams' injuries but refused to do it. What does that have to do with an EMTALA claim, which is intended, as I understand, to prevent hospitals from shuffling patients off to other hospitals because of lack of insurance and denied care? You may well have a compelling medical malpractice claim with respect to lack of staff and the refusal, alleged refusal of this surgeon to conduct the surgery in time. All of that sounds pretty compelling. But I'm just not sure what that has to do with a statute that is not intended, I don't think, to apply on these facts. Well, the lower court found that we had presented enough evidence to show that there was a failure to stabilize. So I really didn't think it was necessary to get into that. The only issue that we're really challenging is the moment of his arrival to the moment he was admitted, which is a question of fact that still hasn't been determined. It's still unclear because that is the period of time where EMTALA is in effect. So if he's not being stabilized during that period of time and he suffers harm, as he did in this case, then it is an EMTALA case. The district court found that because he had been admitted, and there's no indication in the record, at least according to the district court, that that issue was in bad faith, that that ends the claim. You're not left without a remedy. You're able to pursue the state medical malpractice action, which is still pending. Is that right? No, we want a $6.2 million verdict. Well, good for you. Did that state medical malpractice action include some of the allegations that are part of this case? Well, I separate medical malpractice, again, from EMTALA because they have nothing to do with one another. Again, that's why I'm referring to the moment of his presentation to the hospital, to the moment of admission, which is some time at least 10 hours later. That's when he suffered harm. Is it your position that when the hospital was conducting surgery on him in the operating room around 4 a.m., that he had not been admitted? Correct. Is that based on a technical form admission? I assume that's what you're going to say, but wasn't he, for all practical purposes, admitted if you're in the operating room having surgery done to you? Not necessarily, Your Honor, and that's why there are rules that deal with admission. There has to be a formal admission order that they virtually concede that basically doesn't exist. In their own interpretation, they say he was admitted at 8.05. That's almost eight hours later. I mean, this was a horrific crash, and your client suffered terrible injuries. There's no question about that. But why, piggybacking on Judge Quattlebaum's question, it seems kind of silly to say that he was in surgery in the hospital, but he wasn't admitted? That doesn't make any sense. Well, even if you accept the fact that he was in surgery several hours later. Well, yes, but that does not constitute an admission under Entala. It merely means that he went into surgery. When you look at the time of admission, and even if you take your position, I think that's a jury question to determine, rather than something that would be determined as a matter of law. Simply going into surgery does not mean you're being admitted. It just means you're going into surgery. So when you're admitted, there has to be admit orders, and there are none in this case. So I would submit to this Honorable Court that until he's admitted, which is really what the Entala law says, until he's admitted, Entala is still in effect. Is there, I think Judge Diaz asked, if you can let me finish with this one, I think Judge Diaz asked about your money. In your malpractice case, and I understand your position that those are separate claims, but was the evidence that was presented there, the failure of the hospital to proceed with surgery in the timely fashion and the absence of doctors in accordance with the regulation, was it the same evidence that you say constitutes a bad faith admission? Virtually, I could say yes and no, but it's more no than yes, and let me explain. The reason why we filed the medical malpractice case is because my client developed compartment syndrome, and they failed to perform a fasciotomy. The incision that they made was not long enough to release all the compartments in the leg. The leg has four compartments. So that's really what that case was about, and it dealt primarily with the right leg as opposed to both legs, which Entala includes not only the left leg, but also the left arm. And so you have all these emergency medical conditions that did not receive attention during the most critical times of these injuries are within the first couple of hours of these injuries. Compartment syndrome is basically the buildup of pressure, and you have to relieve that pressure by making an incision from the knee down to the ankle. Is there a case that you're aware of that interprets this statute to talk about the type of situation we have here, which is some claim that after he gets to the hospital and is being treated, according to you and apparently according to a medical malpractice jury, adequate care. It seems like that's what you're arguing, is that he's at the hospital, they're doing stuff to him, they're not doing enough or not doing it soon enough. Is there a case that you have that addresses a scenario like this one? There was a case that we cited, I believe it's Marrero v. Hospital Hermanos Melendez, which talks about an egregious and unjustified delay in attending a patient can amount to an effective denial of the patient's rights on the MCOT. Could you give me the court on that one? It's in your brief. It is. I'll give you the page, no problem. Page 20 in my opening brief. And the citation that you requested was 253 F sub 2nd, 179. It's a district of Puerto Rico case in 2003. But I don't really want to make this about, we've already established, at least to the court's satisfaction, that we've made a claim for the failure to stabilize. I'm still trying to understand what's going on here. Okay. So your argument is he was not admitted when they were doing surgery on him, correct? Correct. And so your argument further is then that EMTALA applies because he wasn't admitted, is that right? Correct. Okay. And what's the violation EMTALA that you're arguing? Well, according to the district court, they found that we provided sufficient evidence to show a failure to stabilize. So that's your argument, failure to stabilize? Well, that's what the district court said. They argued on reply that we failed to show that his admission subsequent to everything else was in good faith. So that was raised for the first time on reply. And so we didn't get a chance to address it, so I believe Judge Thacker asked us, you know, what is the basis of our claim here? One of them was the absence of qualified staff. Well, the absence of qualified staff, you can't admit someone in good faith when you cause them to wait for four hours while their injuries materially deteriorate. What does that have to do with admission? I mean, I understand that has to do with criticism of the hospital, but what's the evidence in the record that the problems you say existed, you know, not having the physicians not going to surgery soon or related one way or the other to admission? Because had he been properly dealt with, the surgeons would have been in place within the first 30 minutes. I hope I'm answering your question. I understand that's your argument. It sounds like you're answering the question of causation about that to your client's injuries. But I don't think you're answering how those alleged problems relate one way or the other to whether he was admitted or not or whether he was admitted in good faith. Because by the time he was admitted, his injuries had deteriorated to a point where they caused him harm. And so the reason why he was admitted, our argument is for non-medical reasons. The reason why he was admitted so late was for non-medical reasons. That is, there was a refusal to treat when he could have been treated by one of the doctors. There was an absent qualified staff within a period of time that he could have been treated whereby he wouldn't have suffered his injuries. And that there was a, we believe that there was a concealment from his colleagues of the expense of harm that was caused between the time of presentation and the time of admission. And we also believe that he was being hoarded for financial gain because he had a premium insurance coverage. The bottom line is, the only issue here is, again, the good, whether or not this was a good faith admission. We claim that it cannot be a good faith inpatient admission when he was not being, when his emergency medical condition was not being treated from the moment of his admission, I mean from the moment of his presentation to the moment of his admission. And is it your view, Mr. Gordon, that all those claims you just talked about are not the types of things that can be litigated in a state medical malpractice action? Yeah, but, well, the bottom line is, when the defense was... Was that a yes? It's probably a yes and a no. At least, well, yeah, well, yes, they could be addressed. But there's going to be some overlap in EMTALA. But the overlap, let me, if I may, the overlap occurs after admission. So anything, from my understanding of EMTALA, anything that occurs where there's harm results from the moment of presentation to the moment of admission, if you have this little window, because you're not being treated, you suffer harm, then that's an EMTALA violation. And, again, this is turning to EMTALA, but, as I said, the courts said that we may not be able to do this. We can't get out a claim of failure to stabilize, which is an EMTALA violation. So the only issue is, when he was admitted, eventually, was it in good faith? We say no, because he should have been admitted earlier to prevent his injuries from occurring. Let me just ask you specifically about one of the claims you made, that the hospital was hoarding him because of his insurance policy. Yes. Do you have a case that says that an EMTALA claim may be made out because of hoarding? We cited a case in our brief that spoke to that issue. And it may be in there, and I overlooked it, but it just seems to me that that seems so inconsistent with the whole purpose of the statute, which is to prevent hospitals from refusing to treat patients primarily on the notion that they were not insured. They did not recover their costs. Again, we're not here necessarily to argue EMTALA. I think district court, nobody even appealed that issue. You're not here to argue EMTALA? This is what this case is about? No, we're here to deal with the good faith admission. That was one of your grounds for good faith. That's the exact thing you argued made it in bad faith, what Judge Diaz just talked about. So that's a, it sounds like you don't think that applies right now, and I thought that was one of your grounds for claiming it was in bad faith. The ground, let me just try to be more clear, at least in my articulation of the issue. We're not really challenging, we're not challenging the lower court's finding that dimensions failed to stabilize. There was a defense raised on a reply that we failed to argue that when they did admit him, he was admitted in good faith. Our argument is that no, he could not have been admitted in good faith, because good faith required that he be admitted within 30 minutes, or treated within 30 minutes of his arrival, that he doesn't suffer any harm between the time of presentation, or any deterioration of his emergency medical condition between the time of presentation and the time of admission. And that there was a refusal to treat during the period of time most critical to his injuries, which would have been the first two hours to prevent pressure from developing, and ended up in compartment syndrome where there was a need for a fasciotomy, which was litigated in state court. All right, thank you, Mr. Gordon. Good morning, Your Honors. May it please the court, Christian Kintai on behalf of Dimensions Health, doing business at Prince George's Hospital Center. Your Honors, this is not an EMTALA case. EMTALA pertains to transfers. The only transfer that happened here was 11 days after this patient arrived at Prince George's Hospital Center when he was transferred to University of Maryland Shock Trauma in stable condition. What is EMTALA? EMTALA is an anti-dumping statute. That's why it was perceived and created by Congress to correct the perceived failures of emergency rooms, to provide treatment to patients that presented with an inability to pay, or for other non-medical reasons. There was a perceived failure, there was a perceived problem with patients being turned away at the door and not receiving treatment, either while in active labor or while other emergency medical conditions presented. So this statute was created to create what was perceived as a gap in state tort law, to give patients a remedy where state tort law could afford none. If a patient came into an emergency room with an emergency medical condition, just sat around without being screened or treated, the hospital could avoid liability, saying, I'm sorry, we never undertook a duty to treat you, you don't have any redress with us. I understand Mr. Gordon's claim to be just that, that the hospital kind of sat around for a little while before deciding what to do with this client's injuries. Well, so to that point, these are really issues of quality of care and correctness of care, not EMTALA claims. In terms of a delay in treatment or a perceived delay in treatment, the record belies that. The patient arrived at 1.30 a.m., he was immediately screened. There is no issue before the court that there was a failure to screen. It found that he had no blood pressure, and he was given massive transfusions over the course of the first hour. But there may be, I don't mean to cut you off, but there may be a dispute about the delay in treatment or not. I mean, it sounds like there could be a dispute about that. The question is whether, it seems to me, the question is whether EMTALA covers that type of claim. And what's your position as to whether EMTALA covers a claim based on the fact that there's no, neither a delay of certain treatment or delay in moving from outpatient to inpatient? What's your position on that issue? It's my responsibility. It could. It could cover such a scenario. I think one has to look at the facts of each case. Under this case, this patient was admitted. He was provided treatment over the course of 11 days before he was transferred in stable condition. So the patient does have a remedy with the hospital under that scenario, because the hospital has a duty to that patient. And any delay in treatment when he arrives, he's taken to the trauma bay, the doctors are working on him. If the patient perceives that his treatment is delayed during that period of time, he has a recourse in state medical malpractice. It sounds like he actually obtained a recourse. Indeed he did, which is, I guess, further support for our position that this is absolutely not. I don't know that it benefits us to get into the details of that claim, but can you talk generally about whether or not these very issues that Mr. Gordon talks about were part of the case there? So in medical malpractice tort, obviously the case is dependent upon experts, and if they don't have an expert that comes in to say that there was a delay, they don't get to present that issue. Their experts came in to the state court to say, we think the medical malpractice is with the quality of the initial surgery they received. They have the opportunity to have an expert come in and say, this trauma surgeon did wrong immediately when he presented by not doing X, Y, Z. They have the opportunity. They have that redress because there is a duty of the hospital under those facts of the case. The reason we have this... I didn't mean to divert us from that, because I don't think we want to get necessarily into the details of that case, but if I understood Mr. Gordon's argument, he's resting primarily on the timing of the admission here and whether or not that admission, whenever it occurred, happened in good faith. And what's your position with respect to that? My position with all due respect is that counsel is just absolutely incorrect as far as what EMTALA does. Counsel for Mr. Williams argues that EMTALA governs everything up until the patient arrives, up until he's admitted in good faith. And that's just not the case. And essentially what he asks the court to do is say, EMTALA governs this time period up until the point of admission, and it becomes a quality of care statute where you judge the quality of care during that time period. You judge the correctness of care during that time period. So the dispute about the time of admission is immaterial? I believe it is, Your Honor, for two reasons. Number one, counsel for Mr. Williams concedes in his brief that the patient was admitted. There's formal admission orders in the chart on the first day, admitted to intensive care. He's admitted on paper and he's admitted in practice. CMS guidelines, you're familiar with them, you've read the briefs. That's your argument, that he was admitted in practice. I don't think that appellant agrees that he was admitted in practice. And my question is, is that timing difference in practice versus on paper, is that a material fact? Because this is summary judgment, isn't it? It is summary judgment, it's not a material fact. The only reason the good faith admission was even brought up, or admission was even brought up, because it is a complete defense to an EMTALA claim, and the reason it was brought up was the only conceivable way that this could potentially be an EMTALA case would be if one were to take this case as this admission,  a plethora of care by teams of healthcare providers was somehow subterfuge for the hospital to avoid its EMTALA obligation. In other words, they did all this so that they could dump this patient, your honors, and they just didn't do that. If this patient were dumped 10 hours after he arrived, if they brought him in and as, take counsel's characterization, he was just sitting around and nothing was happening, and then the hospital decided, well, we're going to admit him, and they admit him on paper, and then three hours later they say, you know what, we've got to transfer him to the University of Maryland, and his medical condition deteriorates during that transfer, then potentially under those facts there's an EMTALA claim. Similarly, if the patient was admitted in bad faith over the course of 10 days, and then on the 11th day he's transferred up to the University of Maryland, and his emergency medical condition deteriorates as a result of not receiving stabilizing treatment up until that time of transfer, and there was indeed a subterfuge or lack of good faith admission, it possibly could be an EMTALA case. However, the district court was quite thorough, and you can read the record that it relied on. There's absolutely not even a micron of evidence of a lack of good faith, of subterfuge to avoid EMTALA, because there is no dumping here, your honors. Counsel, again then, the mistake that he makes with that EMTALA governs the quality and correctness of care from the time of arrival up to admission, he sort of combos that with an idea that EMTALA creates a requirement to stabilize or transfer. Again, that's inviting EMTALA to be a federal malpractice case. These judges in this court will then be deciding whether or not shock trauma could have saved the patient's legs, whether or not Dr. Smith over at this hospital could have fixed this condition. This court's in no position to do that with the text of the statute. It was never meant to do that, and quite the opposite. The courts have come down all across the country, all across all circuits, saying emphatically this is not a medical malpractice statute. This statute is limited. It limits what a hospital must do. It's not a quality of care. It's not a complete or correctness of care statute. It's a statute that requires certain stabilizing treatment and certain screening treatments to be given to patients in order to prevent dumping of patients. So is it your position that if a hospital begins treatment and does so negligently, there's no EMTALA claim? There may be a malpractice claim? I think it would turn on the facts of the case, Your Honor. But yes, if a patient goes to a hospital and the hospital accepts and treats that patient, a duty of care arises under state tort law, whereby a patient can redress those grievances under state tort law. And that's what has been said. So only if they turn the patient away for no good reason is there an EMTALA claim. Is that your argument? The courts have specifically said that the stabilization requirement of EMTALA pertains only to certain transfers. This statute was designed to prevent patient dumping, to prevent hospitals from being able to refuse to provide care and transferring or dumping a patient without providing stabilization treatment. There have been courts in this court, in Matter Baby K, where the court did look to the facts after the time of an admission. But again, just to assure that there was a good faith admission. In that case, the hospital wanted to admit the patient. You give lawyers a chance to interpret these laws, they'll come up with a crafty way to get around EMTALA. And they tried to do that in Baby K. They tried to say, hey, we'll just admit this patient, but we won't provide this stabilizing treatment, and therefore you can't get us with EMTALA. Well, the court said, and this was before the good faith requirement of CMS, they said, not so fast. You can't refuse to provide stabilizing treatment under these facts. Because under those facts, they were contemplating a transfer, a transfer back to a nursing home. Under those facts, no other treating facility would accept a transfer. But the court, again, couched it in terms of a contemplated transfer to provide the stabilizing treatment necessary to send the baby back to the nursing home without a deterioration. So your client's hospital was a level two trauma center, is that right? That's correct. And he ultimately, the patient in this case, Mr. Williams, was transferred to a level one trauma facility, right? That's correct. That's a higher standard of care. And this is not exactly the facts of this case, but just so I understand your view of the reach of EMTALA, if Mr. Williams had presented at your client's hospital and they had made the determination right away, this is beyond our capacity to treat, we need to get him transferred to this other level one trauma center. But in the meantime, they do nothing to stabilize him until the transfer is made. That's an EMTALA claim. Under those facts, as you present, there could possibly be an EMTALA claim there. That's what this EMTALA statute is about. It's about requiring under that situation my hospital to do one of a couple things, either stabilize him with enough treatment that would provide for a safe transfer. If that's impossible, sign off that the benefits outweigh the transfer. And if that's done appropriately, there would be no EMTALA claim. I grant you that the facts suggest that there was treatment and attempt at stabilization, but does it matter? Does it need to be successful stabilization or just an attempt? Well, gosh, I guess if you would open up an EMTALA can of worms for every patient around the country who couldn't be stabilized, you would try to use the text of this statute to judge whether or not a patient could have been stabilized versus whether Dr. Smith at another hospital could have stabilized the patient. Didn't our Brian case address that? Don't we say there when you undertake to stabilize, that's when EMTALA liability ends? It seems to me that language suggests that it's the effort to do that, and hopefully it's successful, but maybe not be. And if it's not and it's below the standard of care, then your remedy is malpractice. If you undertake to do that, unless you do it in bad faith. Certainly. Brian was quite similar to this case. You had a patient who was brought to the hospital, stayed there for 12 days, was admitted to the hospital, and then the hospital decided we're not going to provide more stabilizing treatment to the patient. I think the patient died. And under those facts, there is no inappropriate transfer. There's no failure to stabilize prior to the transfer. The redress is medical malpractice. It's a duty under state tort law owed to the patient by the health care provider, and the redress is based in state tort law. Again, I think those scenarios, if you find that they're EMTALA claims, they set up this court to decide medical malpractice, quality of care, and correctness of care issues, which clearly, according to the jurisprudence, is not what the statute was meant to do. Do you have anything further? I don't have anything further unless you have any other questions. I think counsel misstates the law. Pursuant to EMTALA, if an emergency medical condition exists, the hospital must stabilize the condition if medically warranted, transfer the person to another facility if the benefit of transfer outweighs the risk. A hospital stabilizes a patient when it provides such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility. Although the statute defines stabilization in terms of transfer, it obligates a hospital to stabilize a patient even if it is not transferring the patient, as in Ray Baby Kay. When instead of discharging or transferring the patient, a hospital admits an individual as an inpatient for further treatment, the hospital's obligation under EMTALA ends. So from the time of presentation, as I indicated earlier, to the time of admission, which is still fuzzy, EMTALA is in effect. If the patient suffers harm between the time of presentation and before admission, EMTALA has been violated. And that's the argument here. It's not that you gave the patient resuscitative management or you managed their respirations or resuscitation. You have to treat the emergency medical... So in the state trial, there were no arguments made about the patient suffering harm between the time of presentation and admission? No. No, it was not. So, yeah, no, the answer to that question is no. So if the patient suffers harm between that period of time, that's an EMTALA violation. When is admission? Nobody knows because they don't have the record. I would challenge counsel to provide the court with any admission order or any document that is not hearsay in terms of when the patient was admitted. We will submit that the patient was likely admitted about 12 hours later, but by that time, his injuries were at a point where they were irreversible. Ultimately, when he was admitted, they were treating the harm that he suffered before he was admitted while in the hospital, and that is compartment syndrome. Counsel, you read from Baby K, and I appreciate you doing that. But after Baby K, the Bryan decision from this court provides more precedent, at least, that we're working with, and it fairly narrowly views Baby K to the medical conditions at play there. Correct. And it talks about that once EMTALA has met the purpose of ensuring that a hospital undertakes stabilizing treatment for a patient, then liability for EMTALA ends. If you could explain how you reconcile your argument with Bryan. Well, Judge Williams, I mean, I'm sorry, the judge below went through the same exercise. And he found on page 18 of his opinion from 2017 that Williams had stated a claim for failure to stabilize. That's a pleading. That was a motion to dismiss. That was what he said about whether you had adequately pled. I don't mean to talk about that, but you keep going back to whether he had pled a claim. In his memorandum order that's on appeal, he essentially says I kind of got that wrong. I mean, on page 40 of the opinion, he says, you know, really the question is whether there was admission. And I don't want to get too, get arguing about those dueling orders, but I'm really trying to ask you how you can square your claim with Bryan. In terms of the admission, again, Bryan, I believe it wasn't an EMTALA matter because he was admitted subsequently. And during that period of time they were challenging the treatment. We're challenging, again, the window between presentation and admission, not beyond admission. Beyond admission is malpractice. Anything that deals with EMTALA beyond admission is all malpractice. Before admission is EMTALA. So you're saying you couldn't have brought a, I thought you answered earlier that you could have brought a malpractice claim, whether or not what you did here, I agree, we've got to be a little careful since that's not in our record, but I thought you said you had the ability to bring a malpractice claim for Dr. Kahn's failure to participate in surgery or for the hospital's failure to have the required doctors there. I realize that may or may not square up with what you did, but that could be a malpractice claim, couldn't it? Yeah, it could be, but it's also an EMTALA claim because... So it's not the admission then. I mean, you just said admission was the key fact. It sounds like you're backing off that and saying, well, this could be both. Well, what I'm saying is that once you're admitted, the hospital takes responsibility for the care. Prior to EMTALA, hospitals, if they didn't admit you, you weren't their patient, so they could absolve themselves of responsibility for you by arguing that we never established an agency relationship with you. You're not admitted. We don't have to deal with you. Then in 1986, EMTALA comes around. EMTALA says, okay, you guys are dumping patients across this country. It's causing a problem. We need to deal with something that deals with the point of presentation. When you come to a hospital and requesting medical services and a point of admission, because before then there was no patient relationship, EMTALA fills in that gap. In this case, Prince George's Hospital dropped the ball because between presentation and admission, my client suffered harm that he did not have when he came into the hospital. The harm suffered because he did not get the treatment that he needed to stabilize his injury. So when you say that this was something that the judge found on a motion to dismiss and or for summary judgment, it was the same thing. We presented documentation. We presented medical records and things of that nature that weren't objected to. And that's what the court found. They filed another motion for summary judgment submitting the same documentation but saying on reply, which is deemed inappropriate in the first place, that even though perhaps that you found in your earlier decision, because he didn't reverse himself. He didn't say I was most respectfully I didn't see him say I was wrong. He just said you haven't jumped this last hurdle of saying that this admission was lack of good faith. And I'm saying that, okay, they didn't raise that last hurdle until reply after we filed our position. So now here's our argument. It lacked good faith because you can't have a good faith admission when the law, when your own MTALA policy says that you must have physicians in this hospital within 30 minutes of your presentation to go to work on you. Especially when you're in hypovolemic shock. You have these very bad injuries that need care because time is of the essence in treating them. They can go from bad to irreversible within four hours. Mr. Gordon, when Brian, Judge Quattrobon, read you the quote that once MTALA has met that purpose of ensuring that a hospital undertakes stabilizing treatment for a patient, you don't read that as simply an undertaking. You say that the hospital must succeed in stabilizing. No, I'm not. I'm saying they must undertake. But you have to understand between the time of presentation, they didn't treat as emergency medical condition. Even when they performed surgery within that first period of time, they performed exploratory surgery. Okay. So if you can see that they don't necessarily need to guarantee stabilizing treatment, the rest of the language in Brian says this, and the legal adequacy of that care is then governed not by MTALA, but by the state medical malpractice law. Okay. So again, what I'm arguing to this court is when he's admitted, yeah. But even that period of time between, and I guess what I'm probably failing to say is that between the period of time of his presentation and admission, he was not getting stabilization for his emergency medical condition. It's not that you give them air or re-transfuse them with blood. You have to treat the injury. The only way to treat this injury is surgery. There's no other way to treat these types of injuries. And at the time that they endeavored to treat these injuries, he had suffered harm. So the treatment after his admission was basically trying to undo what had occurred between his time of presentation and his time of admission. And that's my argument. That is the MTALA violation, because they violated their own MTALA policy, as well as the federal MTALA policy. Because again, MTALA remains with the patient until admission. Once he's admitted, he's under the doctor's care. It's malpractice. Prior to that, it's MTALA. All right, Mr. Gordon. Your red light is on, so your time is up. Thank you very much. All right, we'll come down and re-counsel and move on to our final case.
judges: Albert Diaz, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.